Good afternoon, Your Honor. My name is Vaughn O'Brien, Counsel for Appellant Haile Nicholson. Proceed. The Anti-Kickback Statute, any violation of the Anti-Kickback Statute that results in a federal health care payment constitutes a False Claims Act violation. The District Court agreed with that. However, it erred when it found that plaintiffs for Nicholson's allegations failed to meet the standard under 9B. The Anti-Kickback Statute simply says that anybody who receives a remuneration knowingly and willingly to arrange for or to make recommendations for purchasing products paid by the government has violated the statute. In the complaint, plaintiffs specifically pointed out that pursuant to an agreement, an illegal agreement, that violated the Anti-Kickback Statute between Medcom that was owned by Jeff Turpin and Rob Holloway, an independent sales contractor, as a result of their illegal compensation agreement where Holloway was paid based on the volume of sales into VA hospitals. So I'm going to be very specific here because I think this is a case I could let you go on, but it wouldn't hit specifically as to what we ought to be addressing here. But from my perspective, my colleagues may be different. That is, you know, pleading these kind of cases is very difficult. There's a particularity requirement under 9B, and then you've got Rule 8 implications. You can do the best you can do and probably not figure it out, but if it's conclusory, which an appellate court can come to that conclusion, it's not going to go anywhere. So, you know, when you're looking at this specifically, why don't you tell me what is your best argument that this amended complaint adequately alleged the inducement element of the Anti-Kickback Statute violation? Well, the Rob Holloway was induced by Jeff Turpin to go and promote products that where Holloway was incentivized based on the amount of utilization paid for by the government, according to this case law. Is that evidence or is that a fact or is that a conclusion? Well, that is the allegation. And specifically, the allegations. An allegation typically notices enough in most places, but the way these cases come out, and I'm just saying, I say I agree with it, but it is the way it is, the law. It has to be, you have to have something very particular here in order to be able to sustain that element. Well, the theory is that the more products that were sold, the more the government had to pay for those products. That was in violation of the, that was the motivation behind the sales agreement. And under USD Mallory, the circuit had already addressed this specific issue where it said that it is illegal to make payments to individuals for the purposes of federal health care programs paying for those products or services. And so consistent with that, the complaint spelled out that a similar arrangement was made between Holloway and Jeff Turpin. How did he do it? How did Holloway arrange for or recommend that the doctors purchase these products? How was it done? That's what you mean by particularity. You can say he did it, but it's just a few, you know, some words, something you got to put in there to say how he did it. He went face-to-face. As the complaint mentioned, this was a bond bill arrangement where the physicians engaged with the representatives on a face-to-face basis who were there to promote utilization of those products. And as a result of that promotion, as well as the availability of the product provided, it was utilized on or about November 2016 on a specific patient. So, Counsel, you said a couple of times just then that Holloway was promoting the products. Correct. I'm sorry, I didn't see that in your complaint. And I thought that's what the district court thought was missing, the part where Holloway is being induced by the commission to actually push these Integra products, to recommend them. And the district court thought you hadn't alleged that in your complaint. Yes. And if the court is to note that proposed amended complaint, it did specifically use the word promote to promote those products. That seems like a huge problem, that it didn't use the word promote or recommend. It didn't sort of close the final loop, which is that he's being incentivized. I don't like that word, but he has an incentive in the form of this commission payment to do something. But we don't really know what the thing is. The last step of this scheme, this anti-kickback scheme, has to be so when he goes to make his sales calls, he says, you guys should use Integra. Integra is what you should be using, and the complaint doesn't allege that. Yes. And the proposed amended complaint, I believe the arguments with respect to addressing the court's concern that the product could have been used just based on availability, I pointed out that we actually did state in the proposed amended complaint that Holloway promoted these products. It wasn't just that he made them available. And so construing the allegations as requiring the light most favorable to the plaintiff, considering all the allegations that the whole purpose of this co-promotion between Integra and MedCom was to utilize these products. And, in fact, there was a reference to the sales competitions, I believe, that spoke to the nature of the competition, which was to promote the products. And so that was why he was there. He also made it available, but that was just to point out that's how that particular claim got submitted, pursuant to the legal compensation agreement where Holloway was specifically promoting and providing these products under the buy and build process. So what may be missing there? You may have said promote and promotion, but you didn't tell how he promoted it. I mean, what were the specific facts? The promotion is the result. It's what happened. But how did he do it? I mean, did he? I don't know. I mean, what did he do? What were the facts to say he promoted it? Promoted is like a conclusion. Okay. So that's what I'm asking, and Judge Harris' question is great to that. And you did mention promote in that amended complaint, but that's all you did. And, Yonah, in fact, if the term promotion and what would be into what promotion entailed needed to be amplified, obviously that's something that can be addressed. Futility is a different position taken by the court, but that's something that can be addressed through amplified facts. As you know, this complaint, basically there was only one attempted amended complaint. In addition, I don't believe the defendant specifically argued that the term promotion was conclusory or anything that pointed out that that was the issue upon which it was resting the defense. Can I ask maybe a predecessor question here? We've talked a lot about the amended complaint. Yes. But the district court denied your request to do that. Can you tell me what information in the amended complaint was only learned by your client after the initial complaint was filed? I mean, part of the idea here is the court found bad faith, right? What you can't do is file a skeleton complaint, get the judge to issue an order, and then put all the information that you knew before in the complaint. And it looks like when I read your amended complaint that most of the information was information that your client had before the first complaint was filed. And the point of this is I want to know what was the new information that was not known, and how do I know that it was new so as to find an abuse of discretion by the district court in finding that you withheld information that you already knew on the first time, such that we can even look at this amended complaint? Okay. So as far as that point goes, Your Honor, the district court did make a finding that there was bad faith based on allegedly withholding information. However, it's important to note what information was actually supplied. From the plaintiff's perspective, most of it was immaterial because you had the addition of a first name, for example, of the sales representative. I understand that. But what I'm asking is what information did your client learn about this scheme after the first complaint was filed? I get that you think it's irrelevant and doesn't matter, but I'm asking sort of a specific factual record question. Is there something in the record that suggests to me that your client only learned certain facts after the first complaint? And if so, what? I wouldn't say that he learned so much more. I would say that most of the complaint was directed at clarifying the court's confusion about what the scheme entailed. And so the scheme was identical. In both complaints, we alleged that MedCom, along with Integra, utilized sales representatives, such that those representatives by MedCom were paid on a 299 basis, which violated the statute. And as a result, false claims came from that. Both complaints said that. Okay, so if I accept that idea, help me understand. So that suggests to me that the finding that you withheld information from the first complaint that you put in the second complaint, how can I then find that the district court abused its discretion in refusing to permit you to amend the complaint two years later based on information that you knew at the time when the first complaint was subject to Rule 9's strictures? Well, primarily because looking at the court's actual language, the primary basis for the bad faith finding was a completely wrong finding by the court. The court claimed that the theory changed. The theory never changed. And it was based on the fact that the first time there was an allegation that MedCom, I mean, the second time to make it more clear to the court that it was MedCom that utilized the reps. He used the term utilization. But if you employ the reps to promote the products, you're clearly utilizing those reps. So the theory stayed the same. And the district court did not recognize that. So he thought that the theory. And your point is that that's clear from the first complaint? Yes, it is. But it depends. That conclusion depends upon it being clear to us from the first complaint what you just said. Well, I couldn't speak for the court. I'm not sure if I understand your question. Okay, so that's one. And then I'll let my colleagues go ahead. Is there any other reason why you think we could find that the court abused its discretion in finding bad faith? Well, based on the case law. I mean, there was basically no precedent that I could find to suggest that clarifying a complaint to address whatever alleged deficiencies existed on the front end, especially when you're talking about adding a first name, adding a specific VA location, as opposed to saying the VA, the Durham VA. That's the purpose of the amendment, to address the court's alleged point out those deficiencies. And so you couple that with the fact that, like I mentioned before, our position is that the original complaint met the standard. But insofar as it didn't, it was just an attempt to clarify the court's confusion about what the actual complaint entailed. Because according to the court, it said that it was implausible for Integra to have utilized, I mean for MedCom to have utilized reps that were reimbursed, I believe, by Integra or something to that effect. And that was not the actual spirit of the claim. The reality was these two companies were co-promoting the same product. One was manufactured by Integra. The other one was simply sold by MedCom. And as a result, there was a dual incentive to promote the products. And so once the court misconstrued the theory, the amended complaint largely was made to address that, as well as add particulars with respect to 9B. But the theory remained the same. And so based on the circuit, the law in the circuit with respect to Mallory that was decided sometime last year and United Airlines v. Grant that said that one of the critical questions is whether or not the scheme can be connected to the presentation of a false claim. Plaintiff clearly, appellant clearly presented a scheme that was connected to the submission of a false claim. And so as a result, the district court erred when it held that the appellant did not meet the standard of 9B. Okay. Thank you very much. We'll hear from the appellee. Proceed. Please, the court. Good afternoon, Your Honors. It's an honor to be here. Jeff Whitley here on behalf of the appellees, Jeff Turpin and MedCom Carolinas, Inc. Your Honors asked two of the most critical questions here. One is, which complaint should we be looking at? And two, where are the facts? What Relator presented to the district court in the first instance was a complaint that was long on conclusions and short on facts. And it was beyond that. It was, in the district court's words, incomprehensible. The scheme was incomprehensible based on what was fled. And that's due in large part to two critical omissions. One is that there are no allegations against the defendant, MedCom Carolinas, Inc. There are allegations against a non-defendant, non-existent entity, MedCom LLC. And then there are these duplicated... Is it a non... This is a question. Is there a MedCom LLC? Does that exist? Your Honor, if it does, it is not related to MedCom. I don't mean, is there one everywhere? Not related to you? Correct, Your Honor. So what the court was faced to look at is, what are the allegations of the scheme of the commissions paid to contractors? And what the relator alleged was MedCom LLC, a non-existent, non-defendant entity, utilized 1099 reps to generate referrals for Medicare and Medicaid, a pure conclusion, but a pure conclusion that includes a defendant and entity that doesn't exist. But at the same time, alleges that Integra, relator's former employer, utilized 1099 non-employee reps to generate referrals in violation of the anti-kickback statute. So as between those two allegations, the fundamental basis for the scheme did not involve MedCom Carolinas, and there were these conclusory allegations as to Mr. Turpin with no explanation of what his role would be, no explanation of the relationship between Integra and MedCom Carolinas. And so the court was left with, well, what am I supposed to do with this? There's no allegation that connects these defendants to this payment to Mr. Holloway, who's not described in any particular detail in the first complaint. And so the court gave ample basis to look at it, whether it was the basis of the claim that the relator set up as a representation, or whether it was the particularity with which he pled the who, what, when, where, and how of fraud, or whether it was just the plausibility of the scheme. Any one of those bases independently allowed the district court to say there's no there there. He has not alleged either an underlying predicate anti-kickback statute violation, or even if we accept this notion that you can plead as to commission payments to contractors, and we accept that that might result in a false claim. You still haven't alleged. Can I ask this question? I'm trying to understand the paragraph 16 in the original complaint in light of the district court's findings. It says that these representatives, which I take to be the contractors, were paid by Mr. Turpin. And then separately, which he can do, right, as long as it's a salary. There's nothing wrong with paying them. The question is, can you pay them based on volume? And then it says, and, I assume meaning separate from the payment from Mr. Turpin, they also received commissions, but it doesn't say from whom they received those commissions. Can I tell from this complaint, assuming that it alleges that commissions were paid, who was paying those commissions?  I think that's another part that was not necessarily as in detail discussed by the district court, but I think that's another problem with what he says is the compensation arrangement, particularly in the first complaint. Now, it has its problems in the amended complaint as well, but there's payment. There's the use of the term payment. There's use of the term commission, but there is no detail, and certainly no detail in a particularized allegation to tell you this is what constituted the payment. This is what the service was for. This is what the commission was for. And critically, any of those payments was made for the purpose of inducing referrals to be made. And then you, and I want you to, you can go back. I think you said there were two questions. I think we're still on the first one, best I can tell. But can you, in order for us to consider the amended complaint, am I right to say we must first find the district court abuses discretion in finding bad faith in order to deny the amendment? Absolutely, Your Honor. So if we found that abuse of discretion, then we could consider whether the amended complaint meets the standard. But short of that, we're only left with this initial paragraph 16, the one paragraph, not the three page. Given our circuit's precedent, it is a deferential standard, and the only time that it is something beyond abuse of discretion is if the court decides that it needs to go to futility. So, for instance, if the district court had denied the motion to amend solely based on futility, this court has the opportunity to go straight to futility. But because there is a reasoned basis under the deferential abuse of discretion, because there is a reasoned basis, this is not an instance where the district court just said, denied, I'm not giving you a reason. It is not where it is so arbitrary and capricious sort of on the record that he didn't make any considered determination as to why.  That is, did the district court, under the abuse of discretion standard, abuse that discretion and is so, I believe the standard is so clearly, I apologize, Your Honor. It's only a decision that could not have been reached by a reasonable jurist for what may be called fundamentally wrong, clearly unreasonable, arbitrary, or fanciful. That's what the court has to decide first. Is the record citation and the district court's reasoning for saying, after judgment, this amendment must be considered because we have no reasoned basis based on the record to support the finding of bad faith. And, Your Honor, so just to get through, because I think to the extent we need to address the amended complaint, the district court reached its conclusion. There were not sufficient allegations that either plausibly spoke to the scheme, plausibly spoke to the scheme as to these defendants, and then the district court gave a pretty detailed reasoning as to why there are not particularity allegations that are required by Rule 9b, and which are particularly important in the context of false claims cases. You know, this is a quasi-criminal statute that has substantial penalties. Why do you say quasi-criminal? Because I take the anti-kickback statute to be an actually criminal. You're correct, Your Honor, perhaps a little loose in the language. Quasi-criminal is pulled directly from the Grant case. It's the way that this circuit has described it as quasi-criminal when it's describing essentially the civil application of the criminal statute. Can I ask, and this is a little bit of a frolicking detour, but you know this world better than I do. So I was shocked to learn that, and I want to make sure I understand this correctly, if a company selling a medical device holds a competition, which we talk about here, and they say we're going to give a Yeti cooler to the person who sells the most widgets, does that violate the anti-kickback statute because remuneration can be in-kind remuneration, and it is based on the volume of sales? And so in that scenario, both the company and the salesman who accepted the Yeti cooler can go to jail? Your Honor, it is an excellent question of which I wish I could give you an excellent answer. I can say that it is an evolving sort of body of case law as to how far that extends. Well, but it's not, I mean, the statute's pretty clear, right? It says remuneration, right? So, I mean, everybody agrees that under the statute, regulations are different. I'm talking about under the statute, if you pay somebody a salary, you pay a salesman a salary, that's remuneration for selling widgets, medical widgets, that that violates the statute. Now, then the statute says, oh, but the secretary can blast certain things like a salary, but it doesn't blast, it seems to me, a Yeti cooler on account of the volume of sales. Your Honor, I think the extension to it, it is not just payment, and that's part of the problem that Relator had here in his allegation. It is not just payment. You cannot say, and Relator cannot sustain a claim by saying, a payment was made, a commission was made to an independent contractor. That in and of itself does not violate the anti-decline statute. It must be made for the purposes of inducing referrals of patients. But doesn't that come from the regulations, not the statute? Your Honor, I think the statute actually says, whoever pays remuneration to induce referrals, I believe, is the language that the statute uses. So that has two elements. But that's the example I'm trying to give with the Yeti cooler, right? I mean, this is the competition. I'm inducing you to have the highest volume. I don't want to belabor this. I understand the Court's point. I think that the limitation, to the extent there is one, is in the scienter of the person making the payment and whether there, in fact, was an inducement associated with that. And so I would contend that there has to be a limit somewhere between what natural sales activity is, which is I have a product, I want to sell as many of those as I can to as many people who will take them, and what the cases that payments of commissions typically are, which is an insider, right? So some of the cases that the relator cites are the surgical tech who was working double duty as also a sales rep for products that he then could recommend to his surgeon in surgery. So he had a foot in both camps. He was the one making a decision to say, this is the product we should use, plus I get a commission, based on how many of those get utilized. That's the classic, traditional anti-KPAC statute fact pattern. That's not what the relator alleged here. He alleged, at least in the first complaint, there was no connection at all to the claim that he said. It was just that this graft was used by a doctor for this patient with absolutely no allegations that connect why that graft was brought to, why it was used, why it was brought to that particular patient, whether or not Mr. Holloway was paid for that particular graft and whether that payment was made as part of some illegal compensation structure that involved Mr. Turpin and MedCom Carolina. Do you agree that the state law claim dismissal should be without prejudice? Your Honor, to the extent this court's decision is that it affirms the dismissal of the 12B6 and it affirms the district court's denial of the motion for leave to amend, it does make sense to me that the dismissal of state law, based on the district court's reasoning, which is I am not choosing to exercise my discretion to retain jurisdiction over this, to the extent it is based on anything else. In other words, he didn't reach the merits of it, so there's no basis for him to dismiss it with prejudice. I think given this court's case law and precedent, that would be a reasoned decision to come to, Your Honor. There are merits-based reasons why that claim should be dismissed. Let me ask you on these cases. I don't know why I'm getting more of these false claims acts cases, but these cases are different from the run-of-the-mill, file-of-complaint, civil-type action, whether it's quasi-criminal or whatever. Rule 9 has added this particularity requirement, and we have Iqbal and Plumlee that come involved in it. So they're different kind of cases from what I see are the normal complaints. I mean, a complaint of this sort, as your counsel on the other side has alluded to, typically is read in a very liberal fashion in which you can infer certain things, and it survives 12b-6, but this complaint does not even make it past dismissal on a 12b-6 basis because, from your perspective, Rule 9 requires particularity, and it seems as though the case law is headed in that direction. I guess what I meant is almost to the point you probably ought to put in a transcript or something in this thing or do a demo to get some information. You can't put in too much information. Let's put it that way. You can't just say what I mean to get promotion. Go into the details. Agnosium. Say too much. It sounds like to me to get these cases past the 12b-6, then you're running some judgment down the road, of course, but at least you might be able to survive that aspect of it. And I'm just wondering, you know, you do view these cases as being different than many of the regular civil cases that we deal with in terms of the pleading requirement. For whatever reasons, that's where we are. Your Honor, I wholeheartedly agree with that. In the stratification of least to most allegations, these sit amongst the top, and there's good reason for that. There's at least two really good reasons. One is what I alluded to earlier, which the circuit talked about in the Grant case, which is it's the gravity of the liability that's at issue. You were talking about… Yeah, but the oddity of that, right, and we're way out of, you know, the fallout can detour your land here, but if you get indicted on an anti-kickback violation, the indictment has to include darn near nothing, right? And yet, to get sued civilly, so you're just talking about the gravity of the penalty, but, you know, if you get indicted, it doesn't have to include anything, but, you know, to Judge Wynn's point, if you get sued civilly, I mean, you've got to dot every I and cross every T. Well, and I think the other reason for that, Your Honor, which is the other point I was going to address, is that it's a whistleblower statute, right? So the promise of a pot at the end of the rainbow for the whistleblower who has a valid claim is that they're coming in with substantial pre-discovery knowledge because otherwise it's a free-for-all. In the healthcare industry, it's every person who, you know, it's see something, say something, gone wild. Without an understanding of what's going on in the healthcare industry, it requires the relator to come in and say, I personally was involved in it, or I can give you examples of claims that I know to be false. And the fallout from not having that is the burden on this court's docket, but also the liability that we talk about. We probably could go round and round. Judge Richardson brings up a great point. He, being a former prosecutor, hadn't thought about that. He's exactly right. You can be sent to jail quicker on this thing than you can get money from it. There's a balancing thing here, and that's not our job as judges. We'll just do our job and follow the rules here. But every now and then we do like to express our frustration. Do you have anything you'd like to add? No, Your Honor, other than to just reiterate Judge Richardson's appropriate point, which is the amended complaint didn't fix the issues. The district court got it right, and it said let's assume that he added the contractor's first name, and he added the place of the Durham, the VA facility was actually in Durham. He added a few details, details that, as we pointed out, he should have had at the beginning, should have been there in the first instance. It didn't fix the fundamental issue. Where are the allegations that payment from these defendants were made to get a referral of a patient for use of this product? And the injection of additional allegations, such as the buy-and-bill model, actually really cuts against the plausibility, even though there's more details in the amended complaint. The traditional conception of what buy-and-bill means, as opposed to one-off uses, is that the provider or the doctor buys in bulk medicine, they pay affirmatively out, and then as those supplies or medications are used, they're then billed. So the allegation that this was made as a buy-and-bill type model for the VA suggests to me that there was a sale to the VA writ large for no referral at all, and then there are uses as patients come in. Well, that's not an inducement of individual patients. That is the supplying of product that will be used at some future date. Now, whether or not that's what we later met, I can't tell. We can't tell from the amended complaint. But what's important about that is the fact that you can't tell says that he has not provided the type of detail that Rule 9b does require. But to Judge Richardson's point, we don't need to get there because there is ample evidence in the record that the district court made a reasoned determination that both the late-coming allegations, the shifting allegations, and essentially putting in allegations through the briefing and the violations of the local rules were sufficient to find bad faith. And the court can stop right there. The district court did not abuse its discretion, and this court should affirm both the dismissal of the original complaint and affirm the denial of the motion to amend. Thank you, Mr. Fitts. Mr. Brin, you have a few minutes in rebuttal. Yes, Your Honor. I'd just like to add that despite the arguments by defendants, Mr. Nicholson plainly alleged that it was MedCom sales representative Rob Holloway who was paid by the owner, Jeff Turpin, on a 1099 basis to promote products, including Integra's IDRT. And as an example, pursuant to that scheme, Rob Holloway submitted a claim for payment on or about November 2016 to Dr. Phillips for an Integra dermal replacement therapy graft for use on patient TW at the VA. As a result, the claim was ultimately paid to Integra by an agent of the processing department of the VA through VA care benefits in excess of $3,000 during the same month. Based on the case law in this circuit as well as that that I pointed to in Grubbs, to require any more at the pleading stage would surpass what's necessary to win a trial. And that's not the result that this court should agree to. The fact of the matter is I understood the court's earlier question about language, about promoting and amplifying what the promotion entailed, but these were sales representatives. And they were there and paid based on the utilization of these products. Looking at the plain language of the anti-kickback statute, that is illegal. The arrangement was illegal. In Mallory, this court said that sales representatives who are compensated for recommending a health care service like the HDR or single X-Tex to physicians, they use that as an example of illegality. The payments don't have to be made to the doctors. The payments were made to the reps, and those were illegal. And as a result of that interaction, those products were used on a patient at the VA by Dr. Phillips. The claim was tendered. Based on the buy-and-build process, the claim was tendered by Rob Holloway to the physician, who was an officer of the VA. He's the one using the product. And then it's paid for through purchasing. So if we know that it was paid for, we know where it was used, we know what patient it was used on, we know all of the parties, the particularity is there. And the notion that it was some nomenclature issue of MedCom Carolinas versus MedCom LLC corrected that. And, yes, the district court was confused as to who Rob Holloway worked for, perhaps, which is why I thought the allegation shifted. Defendants were never confused. They capitalized on the court's confusion. Rob Holloway always worked for MedCom. The theory was identical. And that was the primary purpose for which the court found bad faith. Now, it did add something along the lines of withholding facts. But what were those facts that were withheld? Again, the specific VA location, the first name of the representative. Based on the case law, that was not material. I believe the particular date, maybe, but I believe the original complaint included November 2016. So those facts were not material changes. The theory was identical. So, yes, the court made a ruling that plaintiff engaged in bad faith, but that was completely erroneous. And based on the facts of this case, the standard to show that the court abused its discretion was met. Beyond that, Nicholson would also allege that state claims should not be dismissed with prejudice. The false record presentation was sufficient to meet 9B as well. And the court should reinstate these claims because the original complaint was sufficient and the proposed amended complaint was definitely sufficient to meet the requirements of 9B, based on the case law of this circuit of United Airlines v. Grant, as well as the decision in Mallory, which basically said these type of arrangements are illegal. Thank you, Mr. Bland, Mr. Whitley. And as you know, and I said earlier, we normally would come down and shake your hands. It's a tradition that we hold dear. It's unique to the Fourth Circuit. We won't do so here because, for obvious reasons, the virus. Look forward to the time when we can. So thank you for being here today. Thank you.
judges: James Andrew Wynn, Pamela A. Harris, Julius N. Richardson